IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | Chapter 13 |
| GEORGE ORVILLE MAISH, JR and | * | |
| JUDITH DUQUETTE MAISH, | * | |
| Debtors | * | Case No.: 1-06-bk-00541MDF |
| | * | |
| COMMERCE BANK/HARRISBURG, | * | |
| Movant | * | |
| | * | |
| v. | * | |
| | * | |
| GEORGE ORVILLE MAISH, JR and | * | |
| JUDITH DUQUETTE MAISH, | * | |
| Respondents | * | |

**OPINION**

Before me is the motion of Commerce Bank/Harrisburg ("Commerce") to dismiss the chapter 13 petition filed by George and Judith Maish ("Debtors"). Commerce asserts that Debtors are not eligible for chapter 13 relief because the amount of their unsecured debt on the date of the petition exceeded the statutory eligibility limits set forth in 11 U.S.C. § 109(e). The parties dispute the extent to which Commerce's claim, which is secured by Debtors' residence, is undersecured. Debtors also allege that Commerce waived its right to file a motion to dismiss on the grounds that Debtors unsecured debt exceeds the statutory limits in an earlier proceeding in this case. For the reasons set forth below, I find that Commerce did not waive its right to file a motion to dismiss and that Debtors are ineligible to file for relief under chapter 13.

**Factual and Procedural History**

In April 2002, Debtors purchased a residential property, built in 1858, located at 308 East Derry Road, Hershey, Pennsylvania (the "property"). Although the property is located in a

1

desirable area, when it was acquired by Debtors it was in need of significant renovations.  To that end, on November 22, 2004, Debtors obtained a loan from Commerce in the amount of $560,000.00 secured by a first mortgage against the property.  When these funds were insufficient to complete the renovations, Debtors obtained a second loan from Commerce on June 17, 2005 in the amount of $142,000.00 secured by a second mortgage on the property.  The restoration work was commenced, but not completed, before Debtors filed the instant bankruptcy petition on March 30, 2006.

On October 12, 2006, Commerce was granted relief from the automatic stay, and shortly thereafter, Debtors executed a deed in lieu of foreclosure.  After it acquired the property, Commerce completed the renovations at a cost of $85,287.22.  On March 16, 2007, Commerce sold the property for $407,700.00.  From the total sale proceeds received, $322,412.78 was applied to the principal on Commerce's total claim of $703,953.77.  Thus, after the post-petition sale, Commerce was left with an unsecured deficiency claim of $381,540.99.

In February 2006, Commerce obtained an appraisal for the property, which valued the real estate and improvements at $445,000.00 if the renovations were completed and at $360,000.00 "as is." On schedule "A," Debtors estimated that the value of their residence was $599,000.00 as of March 30, 2006 based on "a realtor's listing price"[1] with secured claims against the property totaling $696,000.00.  On schedule "D" Debtors listed total secured debt in the amount of $729,048.00, and on schedule "F" they reported total unsecured debt of

---

[1] Mrs. Maish testified that the value listed on schedule "A" was based upon an appraisal that they obtained shortly before they listed the property with a real estate agent.  The appraisal was not admitted into evidence because the appraiser was unavailable to testify. She further testified that the property was listed with the real estate agent in April 2005 with an asking price of $599,000.00.

2

$81,202.42. On July 10, 2006, Commerce filed a proof of claim for the unpaid unsecured deficiency claim in the amount of $381,540.99.

The chapter 13 plan Debtors filed with their petition provided that they would "surrender and relinquish their interest in the [Hershey] property in satisfaction of [Commerce's] claim[s]" under both the first and second mortgages.[2] Commerce objected to its treatment in Debtors' plan and a hearing was set for June 21, 2006. At Debtors' request, the hearing on confirmation was continued until September 20, 2006 with the parties stipulating that Commerce's agreement to the continuance was not a waiver of its right to file a motion to dismiss Debtors' case. Confirmation of Debtors' plan again came before the Court on September 20, 2006, but the Court granted a second request for a continuance until November 15, 2006. On October 26, 2006, the parties filed a "Stipulation as to Timing and Method of Determining Fair Market Value of Real Estate" ("Stipulation"). The Stipulation stated that all proceedings to determine the amount of Commerce's allowed secured claim and unsecured claim were continued until the earlier of April 30, 2007 or after the property was sold. The Stipulation was silent on the specific issue of whether Commerce retained or waived any right to file a motion to dismiss the case. At the November 15, 2006 hearing, Commerce did not specifically reserve a right to later file a motion to dismiss the case.

On March 21, 2007, Commerce moved to dismiss Debtors' case or to have it converted to one under chapter 11. The basis for the motion was that the amount of Commerce's unsecured deficiency claim after the sale causes the Debtors' total unsecured debts to exceed the statutory

---

[2]On May 22, 2007, Debtors filed an amended plan in which the above-quoted language was altered to state that the property would be surrendered in "full satisfaction" of Commerce's claims.

limits for unsecured debt.[3] Debtors responded to the motion by arguing that Commerce's calculation of its deficiency claim is based on a post-petition transaction and thus is not to be taken into account when determining Debtors' chapter 13 eligibility. Debtors contend that chapter 13 eligibility must be determined as of the date of the filing of the petition and that other evidence of the amount of debt may be considered only if the schedules were not filed in good faith. Debtors also argue that Commerce waived its right to move to dismiss the case when it agreed to the continuance of the November 15, 2006 hearing without specifically reserving its right to file a motion to dismiss as it had done previously at the June 21, 2006 hearing.

A hearing was held on the motion and briefs have been filed. The matter is ready for decision.[4]

## Discussion

*a. Waiver of right to file a motion to dismiss*

Commerce filed its motion to dismiss this case under 11 U.S.C. § 1307(c). Neither section 1307(c) nor the Federal Rules of Bankruptcy Procedure set a time limitation on the filing of a motion to dismiss. Generally, motions to dismiss or convert a case under § 1307(c) can be brought at any point during a chapter 13 bankruptcy case. *In re Galanis*, 334 B.R. 685, 692 (Bankr. D. Utah 2005). Because such a motion can be filed at any time, Commerce had no duty

---

[3]Commerce's brief makes various alternative arguments regarding the exact amount of its deficiency claim depending on the appraised value of the property. Each calculation produces a sum, either alone or when added to Debtors' other unsecured debt, that exceeds the statutory limit.

[4]I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) and (O). This Opinion constitutes the findings of fact and conclusions of law required to be made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is made applicable to contested matters by FRBP 9014.

4

to "reserve" its right to file a motion to dismiss at the June 21, 2006 hearing. Generally, the only instances in which courts have found untimely a motion to dismiss a chapter 13 case on the basis of ineligibility under § 109(e) are situations in which the motion was filed or heard after a debtor's chapter 13 plan was confirmed. *See In re Nikoloutsos*, 199 B.R. 624 (Bankr. E.D. Tex.1996) (motion to dismiss filed three months after confirmation untimely); *Jones v. U.S. (In re Jones),* 134 B.R. 274 (N.D. Ill.1991) (motion to dismiss filed nineteen months after confirmation and ten months after discharge untimely); *c.f. Franklin Federal Bancorp., FSB v. Lochamy ( In re Lochamy)*, 197 B.R. 384 (Bankr. N.D. Ga.1995) (although motion to dismiss filed before confirmation, creditor's failure to raise motion at confirmation hearing waived right to challenge eligibility under 109(e)). Because Commerce was not required to take affirmative action to preserve its right to move for dismissal, counsel's silence at the November 15, 2006 hearing did not waive that right. Consequently, Debtors' argument that Commerce waived its right to file the instant motion by failing to "reserve" it is without merit.

*b. Date for determining the amount of unsecured debt for chapter 13 eligibility purposes.*

When Debtors filed their petition, § 109(e) of the Bankruptcy Code provided that "[o]nly . . . an individual with regular income and such individual's spouse . . . that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $307,675 may be a debtor under chapter 13. . . ." 11 U.S.C. § 109(e). Thus on the date of Debtor's petition, individual debtors with unsecured, noncontingent and liquidated debts greater than $307,675.00 may not file for chapter 13 relief. As indicated above, Debtors' reported on their petition noncontingent, liquidated, unsecured debts in the aggregate amount of $81,202.42, an amount well below the statutory limit. Commerce, however, seeks to add to amounts reported

5

as unsecured on Debtors' schedules the amount of its deficiency claim after the property was sold post-petition.

The parties disagree as to the market value of the property as of the petition date. Therefore, they also disagree on the extent to which Commerce was unsecured on that date. As indicated above, Debtors' valued the property at $599,000.00 as of the petition date. Based upon an appraisal performed on its behalf on February 4, 2006, Commerce insists that the value of the property as reported by Debtors is inflated. Commerce argues that based on the pre-petition appraisal it obtained, the property should be valued at $360,000.00 as of the petition date.

If the Court accepts the value of the property as reported in Debtors' schedules Commerce's unsecured deficiency claim would be $104,871.51 ($703,871.51 - $599,000.00), and Debtors' aggregate unsecured debts would be $186,073.93 ($104,871.51 + $81,202.42). Unsecured debt of $186,073.93 places Debtors well below the statutory debt limit of § 109(e). However, if the Court relies on Commerce's appraisal to determine the amount of Debtors' unsecured debt as of the date of the petition, then Debtors' aggregate unsecured debts of $343,871.51 is above the statutory debt limit of $307,675.00.

The resolution of this matter revolves around the issue of whether the Court may look at evidence other than Debtors' schedules if the Court finds that the schedules were filed in good faith. Commerce has not alleged that the schedules were filed in bad faith. It merely asserts that Debtors' schedules are inaccurate.

A majority of courts have held that to determine eligibility under § 109(e), a court must determine to what extent claims are secured or unsecured under § 506(a). *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 983-84 (9th Cir. 2001) (undersecured debt is treated as unsecured for

6

§ 109(e); *Ficken v. United States (In re Ficken)*, 2 F.3d 299 (8th Cir. 1993) (same); *Brown & Co. Securities Corp. v. Balbus (In re Balbus)*, 933 F.2d 246 (4th Cir. 1991) (same)."The starting point in the Court's § 109(e) eligibility analysis is the Debtor's bankruptcy petition and schedules." *In re Smith*, 365 B.R. 770, 780 (Bankr. S.D. Ohio 2007). But courts are split on whether a court should look any further than a debtor's schedules in order to make this determination. Some courts have found that if the schedules are prepared in good faith, a court's inquiry is ended. *In re Scovis,* 249 F.3d at 982; *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 756 (6th Cir. 1985). It is deemed particularly inappropriate by these courts to review post-petition events such as allowed claims, filed claims, or treatment of claims in a confirmed plan. *Id.* at 756; *In re Smith,* 325 B.R. 498, 502 (Bankr. D. N.H. 2005). However, even these courts have found that if a debtor does not "exercise reasonable diligence or good faith in completing the schedules," a court may look at other evidence. *Id.*

Other courts, primarily bankruptcy courts, have taken the view that a court need not turn a blind eye to evidence that suggests that a debtor's schedules are patently incorrect. As noted by the district court in *In re Sullivan*, 245 B.R. 416, 418 (N.D. Fla. 1999), the eligibility requirements of § 109(e) are based on what a debtor owes on the filing date, not what the debtor, in good faith, thinks he owes. These courts specifically have looked at proofs of claim as well as a debtor's schedules to determine chapter 13 eligibility. *See U.S. v. Verdun*, 89 F.3d 799(11th Cir. 1996 (proof of claim reviewed to determine total unsecured claims). A bankruptcy court need not accept either a debtor's or a creditor's characterization of a claim, but must independently determine whether it is secured or unsecured and whether it is noncontingent and liquidated. The Court agrees with the observation that the characterization of claims in a

7

debtor's schedules are often inaccurate. The schedules should provide the starting point for the determination of eligibility, but post-petition events should be considered to the extent that they provide evidence on the amount of secured and unsecured debt *at the time of the filing of the petition.* *In re Hatzenbuehler*, 282 B.R. 828, 833 (Bankr. N.D. Tex. 2002).

I find that in the within case Debtors reported the value of the property at $599,000.00 in good faith. Mrs. Maish testified sincerely about her belief about the property's value. She seemed perplexed that Commerce would lend her amounts in excess of $700,000.00 on a property it valued at less than $400,000.00. However, it is clear to the Court that this is exactly what occurred. Unfortunately for both Debtors and Commerce, the property, which sold for $407,700.00 after the renovations were completed post-petition, was not worth $599,000.00 when the petition was filed. Although I consider post-petition events when determining chapter 13 eligibility with some hesitancy, in this case I find that Debtors' assessment of the value of the property is fanciful and cannot be accepted by the Court without question. Commerce offered an appraisal prepared shortly before the petition was filed that valued the property at $360,000.00. When it filed its first proof of claim, in July 2006, it valued the secured portion of the claim at $390,000.00. After the renovations to the property were completed and the property was sold, Commerce reported the secured value of the liquidated property at $322,412.78. If I accept any of the valuations offered by Commerce, its unsecured claim, by itself, exceeds the statutory limits of § 109(a). After reviewing all of the evidence, I find that the value of the property is no greater than $390,000.00. Therefore, Debtors are not eligible for chapter 13 relief.[5] Debtors have thirty

---

[5] The Court regrets the hardship that its Order will impose on Debtors and is aware of the difficulties that are created when eligibility for chapter 13 is not determined promptly after a case is filed. However, the Court believes that both parties sought the continuances that were granted

8

(30) days from the date of this Order to convert to either chapter 11 or chapter 7 or the case will be dismissed.

An appropriate order will be entered.

By the Court,

*Mary D. France*
Bankruptcy Judge

Date: October 8, 2007

*This document is electronically signed and filed on the same date.*

---

in this case and bear equal responsibility for the delay.

9